# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **AMALEA IRVIN,** | CASE NO. |
| c/o her attorneys Tittle & Perlmuter | |
| 4106 Bridge Avenue | JUDGE |
| Cleveland, OH 44113 | |
| | |
| On behalf of herself and all others similarly situated, | **PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT UNDER THE FAIR LABOR STANDARDS ACT AND STATE LAW WITH JURY DEMAND** |
| Plaintiff, | |
| v. | |
| **SHANE HILL REHABILITATION AND NURSING CENTER, LLC, dba DIVINE REHABILITATION AND NURSING AT SHANE HILL** | |
| c/o Statutory Agent | |
| ACFB | |
| 127 Public Square, | |
| Suite 4900 | |
| Cleveland, Ohio 44114 | |
| | |
| and | |
| | |
| **DIVINE HEALTHCARE MANAGEMENT, LLC** | |
| c/o Statutory Agent | |
| ACFB | |
| 127 Public Square, | |
| Suite 4900 | |
| Cleveland, Ohio 44114 | |
| | |
| Defendants. | |

Plaintiff Amalea Irvin, through counsel, for her Class and Collective Action Complaint against Defendants, Divine Healthcare Management, LLC Shane Hill Rehabilitation and Nursing Center, LLC, states and alleges as follows:

## INTRODUCTION

1. This case challenges Defendants' timekeeping and pay practices by which they willfully violated their employees' rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Plaintiff brings this case on behalf of herself and other "similarly-situated" persons who may join the case pursuant to § 216(b) (the "Potential Opt-Ins").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. This Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims are so related to the FLSA claims as to form part of the same case or controversy.

5. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside in this district and division and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## PARTIES

7. At all times relevant, Plaintiff Amalea Irvin was a citizen of the United States and a resident of Adams County, Indiana.

8. At all times relevant, Defendant Shane Hill Rehabilitation and Nursing Center, LLC, ("DSH") was and is an Ohio corporation that owned and operated its business, a skilled nursing care and rehabilitation facility known as Divine Rehabilitation and Nursing at Shane Hill ("Shane Hill") at 10731 OH-118, Rockford, Ohio 45882. According to records maintained by the Ohio Secretary of State, its statutory agent for service of process is ACFB, 127 Public Square, Suite 4900, Cleveland, Ohio 44114.

9. Defendant Divine Healthcare Management, LLC, ("DHM") is a foreign limited liability company formed in Wisconsin. It conducts business through its operational/managerial control and, through Ilan Richland and Isaak Markovits as its leadership, direct/indirect ownership of nine skilled nursing, assisted living, memory care, long term care, and/or rehabilitation centers throughout Ohio, including facilities in this district and division. Those facilities, including DSH, are referred to collectively as "DHM Facilities" hereinafter. According to records maintained by the Ohio Secretary of State, DHM's statutory agent for service of process is ACFB, 127 Public Square, Suite 4900, Cleveland, Ohio 44114.

## FACTUAL ALLEGATIONS

### Defendants' Statuses As "Employers" of Plaintiff and Those Similarly Situated

10. Defendant DSH was an "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d), and O.R.C. § 4111.03(D)(2) as it is listed as Amalea Irvin's employer on her W-2.

11. Defendant DHM was an "employer" of Plaintiff within the meaning of the FLSA,

29 U.S.C. § 203(d), and O.R.C. § 4111.03(D)(2) in that it had authority to, and did in fact, promulgate work rules, payroll rules, and assignments and to set the employees' conditions of employment.

12. Defendants were both "employers" of Plaintiff, the Potential Opt-Ins, and the Potential Class Members pursuant to 29 U.S.C. § 203(d) and O.R.C. § 4111.03(D)(2) in that they "act[ed] directly or indirectly in the interest of an employer in relation to . . . employee[s]," including Plaintiff, the Potential Opt-Ins, and the Class Members.

13. At all times relevant, Defendants were, individually and jointly, an enterprise within the meaning of 29 U.S.C. § 203(r), and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

**Defendants' Joint Enterprise of Nursing Home Ownership/Operation and Formation of an Integrated Enterprise**

14. Defendant DHM operates as a common business enterprise by directly and indirectly owning, operating, and managing, including through its affiliates and subsidiaries, nine skilled nursing and rehabilitation centers throughout Ohio, such as Defendant DSH. Those facilities are as follows: Divine Rehabilitation and Nursing at Canal Pointe, Divine Rehabilitation and Nursing at Pearlview, Divine Rehabilitation and Nursing at Sylvania, Divine Rehabilitation and Nursing at Honeytown, Divine Rehabilitation and Nursing at Shane Hill, Divine Rehabilitation and Nursing at Toledo, Hall of Fame Rehabilitation and Nursing Center (located in Northwest Canton), Divine Rehabilitation and Nursing at Schoenbrunn, and Divine Rehabilitation and Nursing at White Oak.

15. According to its LinkedIn profile page, DHM has "got [Ohio] covered" at its nine DHM Facilities:[1]



16. As described below, Defendant DHM and its leadership, Ilan Richland and Isaak Markovits, own and operate the 9 DHM Facilities.

---

[1] https://www.linkedin.com/posts/divine-healthcare-management_ohio-weve-got-you-covered-activity-7168297395028496384-9xpV?utm_source=share&utm_medium=member_ios.

17. For instance, Ilan Richland and Isaak Markovits executed DHM's registration as a foreign limited liability company for records maintained by the Ohio Secretary of State.

18. Records maintained by the Ohio Secretary of State also provide that Isaak Markovits executed the filing of Defendant DSH's trade name.

19. Though DSH is the W-2 employer of employees at Shane Hill, DHM represents to the federal Centers for Medicare and Medicaid Services ("CMS") that it owns and exercises, with its owners, operational/managerial control over Shane Hill. Below is a screenshot from CMS' "Nursing Home Compare" website confirming this fact:[2]

### Owners and managers of Divine Rehabilitation and Nursing at Shane Hill

**OWNER**
5% or greater direct ownership interest

| | |
|---|---|
| DHM OH THREE HOLDINGS LLC (100%) | since 12/01/2020 |

5% or greater indirect ownership interest

| | |
|---|---|
| MARKOVITS, ISAAK (50%) | since 12/01/2020 |
| RICHLAND, ILAN (50%) | since 12/01/2020 |

**OPERATIONAL/MANAGERIAL CONTROL**

| | |
|---|---|
| MARKOVITS, ISAAK | since 12/01/2020 |

**OFFICER**

| | |
|---|---|
| MARKOVITS, ISAAK | since 12/01/2020 |
| RICHLAND, ILAN | since 12/01/2020 |

---

[2] https://www.medicare.gov/care-compare/details/nursing-home/366125?id=af4a0922-9248-4126-8cb9-ff97ae02cc8f&city=Rockford&state=OH&zipcode=&measure=nursing-home-ownership.

20. DHM and its owners similarly operate the other DHM Facilities. DHM submitted mandatory filings with CMS stating that it has operational/managerial control at Divine Rehabilitation and Nursing at Honeytown,[3] Divine Rehabilitation and Nursing at White Oak,[4] Divine Rehabilitation and Nursing at Canal Pointe,[5] Divine Rehabilitation and Nursing at Toledo,[6] Divine Rehabilitation and Nursing at Sylvania,[7] Divine Rehabilitation and Nursing at Schoenbrunn,[8] Hall of Fame Rehabilitation and Nursing Center (located in Northwest Canton),[9] and Divine Rehabilitation and Nursing at Pearlview.[10]

21. Those same filings provide that the owners of DHM also own and/or operate all 9 DHM Facilities.

22. Defendant DHM posts open job positions at DHM Facilities, such as Shane Hill, on its LinkedIn page:[11]

---

[3] https://www.medicare.gov/care-compare/details/nursing-home/366036?city=Wooster&state=OH&zipcode=&measure=nursing-home-ownership.
[4] https://www.medicare.gov/care-compare/details/nursing-home/365488?id=776463aa-f24c-45e5-a518-f13aeaa69458&city=Toledo&state=OH&zipcode=&measure=nursing-home-ownership.
[5] https://www.medicare.gov/care-compare/details/nursing-home/365259?city=Akron&state=OH&zipcode=&measure=nursing-home-ownership.
[6] https://www.medicare.gov/care-compare/details/nursing-home/366328?id=0329f409-e18e-4e00-83f6-b4cbb56e1581&city=Toledo&state=OH&zipcode=&measure=nursing-home-ownership.
[7] https://www.medicare.gov/care-compare/details/nursing-home/365898?city=Toledo&state=OH&zipcode=&measure=nursing-home-ownership.
[8] https://www.medicare.gov/care-compare/details/nursing-home/365152?city=New%20Philadelphia&state=OH&zipcode=&measure=nursing-home-ownership.
[9] https://www.medicare.gov/care-compare/details/nursing-home/365291?id=efdbd9f7-a2b7-4b05-9741-528de3123b9b&city=New%20Philadelphia&state=OH&zipcode=&measure=nursing-home-ownership.
[10] https://www.medicare.gov/care-compare/details/nursing-home/365452?id=1f731e51-0b73-4a30-ba55-7dace28e11af&city=Brunswick&state=OH&zipcode=&measure=nursing-home-ownership.
[11] https://www.linkedin.com/posts/divine-healthcare-management_nowhiring-jobopportunity-career-activity-7094347044793769984-soq9?utm_source=share&utm_medium=member_ios.

**Divine Healthcare Management**
818 followers
8mo

We are hiring!

For more information, please reach out directly or check us out on Indeed using the QR code below!

#Nowhiring #jobopportunity #career



**Defendants' Employment of Plaintiff, the Potential Opt-Ins, and Class Members**

23. Plaintiff was employed by Defendants from January 2020 through October 2023 as a Certified Nursing Assistant ("CNA"), a position that was paid on an hourly basis and was non-exempt from overtime pay.

24. The FLSA and Ohio law required Defendants to pay its non-exempt employees for all hours they were "suffer[ed] or . . . permit[ted] to work." 29 U.S.C. § 203(g); O.R.C. § 4111.03(D)(1).

25. Additionally, under the FLSA and Ohio law, an "employee must be completely relieved from duty" for a "meal period" to be non-compensable. 28 C.F.R. § 785.19(a). A meal break is not considered a bona fide meal period if the employee "is required to perform any duties, whether active or inactive, while [on break]." *Id*.

26. Defendants' time clock software, Viventium, would ask non-exempt employees whether a meal break was taken when clocking out at the end of their shifts. Non-exempt employees could either answer "yes" or "no."

27. Defendants' non-exempt employees were directed to select "no" on the time clock software and fill out a meal break waiver form to report a missed lunch break. At Shane Hill, non-exempt employees were directed to slide the waiver form under the office door of Human Resource Manager Jill Rutschilling.

28. Nevertheless, Defendants edited non-exempt employees' time records to input (30) minute daily meal breaks that were not actually taken.

29. Shane Hill nurses discouraged CNAs from taking meal breaks because one nurse and one aide had to be stationed at each facility hallway at all times during night shifts.

30. Defendants routinely failed to staff the DHM Facilities with sufficient employees to permit those working to take an uninterrupted meal break every shift.

31. Moreover, Defendants regularly scheduled employees, including Plaintiff Amalea Irvin, to work 40 hours or more per workweek.

32. As a result of practices such as those above, Defendants knowingly deprived Plaintiff and similarly-situated non-exempt employees of regular and overtime pay.

33. Plaintiff and similarly-situated employees frequently worked forty or more hours per workweek on the clock, and thus, absent Defendants' failure to pay for all hours worked including by the practices described in Paragraphs 27 to 32, would have received overtime compensation, or additional overtime compensation.

**The Willfulness of Defendants' Violations**

34. Defendants knew that Plaintiff, the Potential Opt-Ins, and the Class Members were entitled to compensation for all hours worked and overtime compensation for hours over 40 in a workweek under both federal and state law, or acted in a reckless disregard for whether they were so entitled.

35. Defendants intentionally and willfully circumvented the requirements of the FLSA and Ohio law. Defendants designed their scheduling, timekeeping, and payroll policies and practices in an attempt to reduce employees' paid hours and circumvent federal and state wage-and-hour laws.

36. Defendants knew that non-exempt employees regularly and routinely worked without meal breaks, and intentionally failed to establish a reasonable process for reporting missed meals.

37. Thus, with actual knowledge that non-exempt employees were required to work through meals, Defendants persisted with an unreasonable process for reporting missed meal breaks.

38. Defendants' practices described above did not change in any respect during Plaintiff's tenure.

## **COLLECTIVE ACTION ALLEGATIONS**

39. Plaintiff incorporates by reference the foregoing allegations as if fully written herein.

40. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability prescribed [by the FLSA] may be maintained against any employer . . . by any one or more employees for and on behalf of themselves and other employees similarly situated."

41. The Potential Opt-Ins who are "similarly situated" to Plaintiff with respect to Defendants' FLSA violations consist of:

> All non-exempt employees who worked one or more forty-hour workweeks at any of the DHM Facilities during the period three years preceding the commencement of this action to the present.

42. Such persons are "similarly situated" with respect to Defendants' FLSA violations in that all were subject to and injured by Defendants' unlawful timekeeping and payroll practices, and all have the same claims against Defendants for unpaid overtime compensation, as well as for liquidated damages, attorneys' fees, and costs.

43. Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary, and therefore all such persons must be sent a Court-authorized notice informing them of the pendency of the action, giving them the opportunity to "opt in."

44. Upon information and belief, the number of similarly-situated persons exceeds 500 persons.

**COUNT ONE**
**(FLSA Overtime Violations)**

45. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

46. Plaintiff brings this claim for violation of the FLSA's overtime provisions on behalf of herself and the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b). Plaintiff's written consent to be a party to this action pursuant to § 216(b) is filed herewith.

47. The FLSA required Defendants to pay their non-exempt employees overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. 778.117.

48. Defendants failed to pay overtime compensation to Plaintiff and the Potential Opt-Ins for all hours worked in excess of forty hours in a workweek. As more fully described above, Defendants, in violation of law, required them to perform unpaid work off-the-clock, including during their unpaid meal breaks.

49. By engaging in that practice, Defendants willfully violated the FLSA and regulations thereunder that have the force and effect of law.

50. As a result of Defendants' violations of the FLSA, Plaintiff and the Potential Opt-Ins were injured in that they did not receive overtime compensation due to them pursuant to the FLSA. Section 216(b) of the FLSA entitles them to an award of unpaid overtime compensation, as well as "an additional equal amount as liquidated damages." Section 216(b) further provides

that "[t]he court … shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B. Enter judgment against Defendants and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Class;

C. Award compensatory damages to Plaintiff and the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b) in the amount of their unpaid wages and commissions, as well as liquidated damages in an equal amount;

D. Award compensatory damages to Plaintiff and the Class Members in the amount of their unpaid wages;

E. Award Plaintiff her costs and attorneys' fees incurred in prosecuting this action and such further relief as the Court deems equitable and just.

Respectfully submitted,

*/s/ Scott D. Perlmuter*
Scott D. Perlmuter (0082856)
Kathleen R. Harris (0088079)
4106 Bridge Avenue
Cleveland, Ohio 44113
216-308-1522
Fax: 888-604-9299
scott@tittlelawfirm.com
katie@tittlelawfirm.com

Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Scott D. Perlmuter*
Scott D. Perlmuter (0082856)
